IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DORE OISHI,<br><br>Defendant. | Case No. 17-cr-00555-DKW-8<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Approximately 22 months into her 63-month sentence, Defendant Dore Oishi asks the Court to reduce her sentence to time served because she is experiencing medical maladies, including bunions, chronic obstructive pulmonary disease ("COPD"), and the effects from an excised, non-cancerous brain tumor. Oishi also cites her inability to provide self-care in prison, recent changes in sentencing law, and the COVID-19 pandemic as factors weighing in favor of her release. Because none of these factors, individually or collectively, present extraordinary or compelling reasons warranting the relief she seeks, Oishi's motion is DENIED.

## RELEVANT BACKGROUND

On July 10, 2018, Oishi pled guilty to methamphetamine distribution-related offenses. Dkt. No. 224. On August 6, 2019, the Court sentenced Oishi to 63 months' imprisonment to be followed by 5 years of supervised release. Dkt. No.

347. Mittimus was stayed until September 17, 2019, at which time Oishi self-surrendered. *Id.*

On July 1, 2021, Oishi filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("compassionate release motion"). Dkt. No. 584. Oishi argues that her deteriorating health conditions, which include hypertension, bunions, COPD, and a now-removed brain tumor, present extraordinary and compelling reasons warranting release. *Id.* at 5–10. She also argues that her inability to provide self-care in prison, recent changes in sentencing law, and the COVID-19 pandemic are factors weighing in favor of her release. The Government filed a response on July 16, 2021, arguing that Oishi's circumstances are neither extraordinary nor compelling, given that she has received timely and quality medical care, is capable of functioning in prison, and is fully vaccinated against COVID-19 while residing in a minimum security facility with virtually no incidence of COVID-19. Dkt. No. 592. Oishi submitted a reply on July 21, 2021. Dkt. No. 593. This order follows.

## **LEGAL STANDARD**

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must

be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction"; and

3. the court considers the sentencing factors set forth in 18 U.S.C. §3553(a).

18 U.S.C. § 3582(c)(1)(A)(i).  The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance.  *See, e.g.*, *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

The parties dispute only the second and third requirements detailed above.[1] As explained below, because the Court finds, in consideration of the totality of the circumstances, that Oishi has not presented extraordinary and compelling reasons warranting a sentence reduction, her motion seeking such a reduction is DENIED.

### I.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons."  While Congress did not define "extraordinary and compelling reasons" warranting compassionate release, the Sentencing Commission has.  *See* U.S.S.G. § 1B1.13.  However, that definition is binding only as to compassionate release motions brought by the Director of the Bureau of Prisons, not where, as here, such motions are brought directly by a defendant.  *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021).  While the Sentencing Commission's statements in U.S.S.G. § 1B1.13 are not *binding* in the circumstance presented here, they nonetheless "may inform a district court's discretion for [Section] 3582(c)(1)(A) motions filed by a defendant." *Id.* at 802.

---

[1] In other words, the Government concedes exhaustion.  Dkt. No. 592 at 6 ("The United States does not contest the defendant's standing to pursue this motion"); *see also* Dkt. No. 584-6 (Oishi's second compassionate release request sent to the Warden on April 11, 2021).

### A.  Health Conditions

Oishi is 67 years old and suffers from hypertension and COPD.  Dkt. No. 337 at 3; Dkt. No. 591 at 13, 37–38.  She also suffers from "painful and debilitating" bunions.  Dkt. No. 584-3 at 4; *see also id.* at 1–2, 37.  In February 2021, Oishi underwent neurosurgery to remove a non-cancerous brain tumor.  Dkt. No. 591 at 218–27.  Prior to that surgery, Oishi reported "forgetfulness" and had "difficulty ambulating due to her peripheral neuropathy."  *Id.* at 218.  Oishi argues that, taken together with the on-going COVID-19 pandemic, changes to safety valve eligibility, and current application of the Section 3553(a) sentencing factors to her case, these medical conditions present extraordinary and compelling reasons warranting a sentence reduction.  The Court disagrees.

Oishi compares her circumstances to those in *United States v. Lindell*, where the Court granted compassionate release to a prisoner blinded by a degenerative disease that the BOP failed to timely address.  -- F. Supp. 3d --, 2021 WL 420059 (D. Haw. Feb. 5, 2021).  Oishi's circumstances, however, are "far different from those driving the Court's decision to grant compassionate release in [*Lindell*]."  Dkt. No. 592 at 18.  Lindell, for instance, was not expected to regain his eyesight.  *Lindell*, 2021 WL 420059 at *6.  Even more troubling was the fact that the BOP failed to provide available sight-saving treatments, despite Lindell's efforts to access them.  *Id.* (explaining that "Lindell has clearly not had the opportunity to

5

attend to his own medical needs while incarcerated. In fact, he has been denied that ability, despite bureaucratically screaming for it.").

By contrast, Oishi is expected to make a full or close-to-full recovery both from her now completed brain surgery and from her impending surgery to address her podiatric issues. Dkt. No. 591 at 6 (noting Oishi is "functioning independently" after her brain surgery); *id.* at 8 (describing the removal of Oishi's brain tumor on February 11, 2021 and stating that she now presents no "focal deficits[] but will require daily PT and OT to regain overall [activities of daily living] independence"); *id.* at 220–21 (discharge paperwork explaining that days after her brain surgery, Oishi was "neurologically intact," "able to ambulate, tolerate a regular diet and [to] perform regular activities of daily living").[2] And unlike Lindell who was denied sight-saving treatments, it appears, based on the record before the Court, that Oishi has been provided timely and quality medical care concerning her now-removed brain tumor. *See id.* at 218–27 (Discharge Summary from Stanford Medicine following Oishi's brain surgery). Likewise, her podiatric issues are being addressed. Dkt. No. 584-8 (Oishi explaining she was

---

[2] The Court recognizes that Oishi's medical records show that residual effects of her brain tumor and related surgery, together with her podiatric issues, continue to cause some mobility issues. Dkt. No. 584-7 (assessment by BOP physician). But this is far from Lindell's blindness for which no corrective possibility was presented and can be addressed with use of walking and mobility aids. *See* Dkt. No. 591 at 1 (Oishi stating "a cane may be helpful"). Moreover, there is no evidence in the record that continued post-operative rehabilitation and surgery to resolve Oishi's podiatric conditions will not improve her mobility.

6

provided an "orthopedic shoe which is helping a lot").  Though the record is unclear as to when, both the Government and Oishi represent that she is set to receive surgery to improve or resolve her bunions  Dkt. No. 584-8 (email from Oishi); Dkt. No. 592 at 2 (Government explaining podiatric surgery is "imminent").  Bunions are, after all, a common and eminently treatable and correctable problem and thus not the type of medical ailment supporting compassionate release.[3]  *See, e.g.*, *Untied States v. Brooks*, 2020 WL 43473737, at *3 (E.D. Pa. July 29, 2020) (explaining bunions, in combination with other manageable ailments, did not support compassionate release).[4]

The Court acknowledges that a one-page form completed by BOP doctor David Duncan provides some support for Oishi's position.  *See* Dkt. No.584-7 (concluding Oishi is "experiencing deteriorating mental or physical health that substantially diminishes [her] ability to function in a correctional facility" and that "conventional treatment promises no substantial improvement to [her] physical or mental condition.").  But other than some mobility issues, for which Oishi uses a cane, Dr. Duncan describes no additional debilitating effects that would diminish

---

[3] *Bunions*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bunions/diagnosis-treatment/drc-20354805 (last visited July 29, 2021) (explaining the surgery to relieve pain caused by a bunion can be done as a single procedure and a patient may be able to walk on the operated-on foot "right after a bunion procedure").

[4] The BOP also appears to be adequately treating the other ailments that Oishi mentions, *see, e.g.,* Dkt. No. 591 at 58 (medical record from July 2020 showing Oishi being prescribed medication to treat her hypertension, COPD, and other chronic ailments), and Oishi does not contend otherwise.

Oishi's ability to function within a correctional facility. *See id.* Moreover, his summary assessment is at odds with the totality of the record, which shows that use of an orthopedic shoe has helped with Oishi's mobility and that "imminent" surgery on her podiatric issues promises to help even more. *See* Dkt. No. 584-8; Dkt. No. 593 at 2, 4.[5]

In short, given the amount and level of medical care Oishi is being provided, and her ability to recover from or manage her non-degenerative ongoing medical issues while incarcerated, the Court finds her medical conditions do not present extraordinary nor compelling reasons to grant the relief she seeks. This is true whether the Court considers those conditions separately from or together with the on-going COVID-19 pandemic, changes in the law relative to safety valve eligibility, and the Section 3553(a) factors.

### B.   COVID-19

The Court recognizes that some of Oishi's conditions, such as her COPD, may place her at an increased risk of a severe reaction to COVID-19 should she acquire it.[6] However, this risk is outweighed by several important facts. Most significantly, Oishi is fully vaccinated against the virus, having received both doses

---

[5]The Court also observes that Dr. Duncan's summary is devoid of an actual conclusion or recommendation and apparently did not carry the day with respect to Oishi's compassionate release request then-pending with her Warden.

[6]*People at Increased Risk: People with Certain Medical Conditions*, CDC (last updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 22, 2021).

of the Pfizer-BioNTech vaccine on January 2, 2021 and February 18, 2021, respectively. Dkt. No. 591 at 147. She is not alone. As of the date of this Order, the Bureau of Prisons ("BOP") reports that 714 of the 746 inmates (about 95%), along with 175 staff, at FCI Dublin, where Oishi is housed, are vaccinated.[7]

Additionally, the BOP is reporting only one inmate at FCI Dublin as currently infected with the virus.[8] Given these facts, Oishi's chances of contracting the virus in her facility are *extremely* low—indeed, with a 95% vaccination rate, which far exceeds the vaccination rate of the general public, it is impossible to conclude anything other than her chances of infection while incarcerated at FCI Dublin are lower than they would be should she be released to the local community.[9] Moreover, her risk of a severe reaction should she be infected is likewise *extremely* low.[10] Oishi's argument that she remains susceptible to the

---

[7]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 29, 2021).

[8]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 29, 2021); *FCI Dublin*, BOP, https://www.bop.gov/locations/institutions/dub/ (last visited July 29, 2021).

[9]*Pfizer-BioNTech COVID-19 Vaccine Emergency Use Authorization Review Memorandum*, FDA, https://www.fda.gov/media/144416/download (last visited July 22, 2021) (explaining that the vaccine was 95% effective in preventing COVID-19).

[10]A test conducted by Pfizer and BioNTech found that the vaccine was 100% effective in preventing severe disease as defined by the U.S. Centers for Disease Control and Prevention and 95.3% effective in preventing severe disease as defined by the U.S. Food and Drug Administration. *Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns Through Up to Six Months Following Second Dose in Updated Topline Analysis of Landmark COVID-19 Vaccine Study*, Pfizer (last updated April 1, 2021),

virus even after vaccination does not constitute an extraordinary and compelling reason in the face of the current scientific consensus to the contrary.

### C. Change in Sentencing Law

Oishi argues that, given the Ninth Circuit's current interpretation of the First Step Act, she would be safety valve eligible were she sentenced today. Dkt. No. 584-3 at 10–11 (citing *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021)). Even if true, the Court finds that the sentence rendered is still the appropriate one.

At sentencing, the Court found Oishi's total offense level to be 27, with a criminal history category of II. Dkt. No. 354 at 1. The Government argued for a total offense level of 25, after a downward departure for cooperation. *See* Dkt. No. 328 at 8. At offense level 27, Oishi's guideline range was 78–97 months' imprisonment; at level 25, it was 63–78 months. U.S.S.G. Ch. 5, Part A – Sentencing Table. Despite this, the presentence investigation report recommended a sentence of 48 months' incarceration. *See* Dkt. No. 337 at 33.

Oishi's argument is that, with an additional 2-level reduction that would have been awarded for safety-valve eligibility, the Court would have found a total offense level of 25 and the Government *may* have then recommended an offense level of 23 resulting from cooperation. Dkt. No. 584-3 at 10–11; Dkt. No. 593 at 5–6. What the Government would have done in that circumstance is, of course, impossible to know. However, even if the Court accepted a Government recommendation of a

total offense level 23, Oishi's guideline sentence would still have been 51–63 months. U.S.S.G. Ch. 5, Part A – Sentencing Table. Thus, a sentence of 63 months' imprisonment is not outside of any theoretically amended guideline range. Moreover, the Court would still have imposed a within-guidelines sentence of 63 months' imprisonment because that is the sentence it believed then and believes now is appropriate given Oishi's criminal conduct. Accordingly, the Court finds a *possible* change to Oishi's sentencing exposure **does not** "tip the scales in [her] favor." *See* Dkt. No. 584-3 at 11.

## II.  Section 3553(a) Factors

Oishi argues that an up-to-date assessment of three sentencing factors in particular weigh in favor of a sentence reduction: (1) her history and characteristics; (2) the need to provide her with medical care in the most effective manner; and (3) the absence of danger that she presents to the community. Dkt. No. 584-3 at 15–22; *see also* 18 U.S.C. § 3553(a)(1), (2)(B), (2)(D). Each is addressed in turn.

Oishi, no doubt, has suffered and continues to suffer from medical conditions not known to the Court at sentencing. Indeed, the discovery and surgical removal of a brain tumor, cancerous or not, is a significant event. Also new, but perhaps less dramatic, is Oishi's development of what appear to be serious podiatric issues, which, together with her tumor and related surgery, affect

her mobility.  *See* Dkt. No. 584-7.  The Court appreciates that these conditions have not been easy on her.  *See* Dkt. No. 548-8.  But it appears her tumor removal has improved her overall function, and a pending podiatric surgery is likewise expected to do the same.  Moreover, these *characteristics* must be viewed alongside Oishi's *history*, which includes several prior convictions and substance abuse, *see* Dkt. No. 337 at 15–18, 21–23, and other relevant sentencing factors discussed below.

Oishi, for instance, asserts that "the BOP is unable to manage [her] health." Dkt. No. 584-3 at 17.  Her proof of this allegation is that it took six months of forgetfulness and other symptoms relating to her brain tumor to worsen before she was provided an MRI.  *Id.*  Further, her foot deformities, of which the BOP has been aware since 2019, have worsened due to inadequate treatment.  *Id.*  As discussed above, *infra* Sec. (I)(A), it appears on the record before the Court that, despite any delays, the BOP is providing Oishi the care she needs, including tumor removal surgery, an orthopedic shoe and cane to assist with mobility, as well as a pending surgery to remedy her podiatric issues.  Oishi has not described, much less shown, any continued consequence from any perceived delay, as was present in *Lindell*. Accordingly, the Court finds that this factor does not weigh in favor of release.

Finally, Oishi argues the following facts demonstrate she is not a danger to the community: (1) her age and current medical conditions; (2) BOP's decision to

incarcerate her in a minimum security facility; (3) the absence of any violence in her criminal history; (4) the absence of any firearms history; (5) the fact that she was not a leader or organizer within her drug distribution conspiracy; and (6) her decision to take advantage of BOP programming, including completing work toward completion of a GED. Dkt. No. 584-3 at 18–22. She also argues that, though she initially struggled with her conditions of pretrial release, she was subsequently successful, and, upon release, she will have familial support. *Id.* at 21–22. These facts do little to change the arc.

First, Oishi's medical conditions are, by and large, being treated/corrected. Second, she was in her sixties when she committed the crimes she was convicted of in this case, as well as when she was sentenced. *See* Dkt. No. 337 at 8–11 (explaining Oishi's offense conduct occurred in 2015 and 2016). Roughly 20 months of incarceration do not, in the Court's view, significantly reduce the risk of recidivism that she presented with at the time of her sentencing in 2019. Third, that Oishi's offense conduct did not include violence, a firearm, or evidence of her being a leader or organizer were all known to the Court at sentencing and are not new reasons for the Court to reevaluate her sentence now. Finally, that the BOP has placed Oishi in a minimum-security facility hardly weighs on the Court's assessment of her risk to the community if released; a minimum-security facility is,

after all, still a controlled environment.[11]

The Court appreciates that Oishi has participated in prison programming and is working towards her as-yet-incomplete GED. That will be important to reducing the risk of recidivism upon her release. But that is also precisely one of the reasons for her continued incarceration: to continue to receive "needed educational or vocational training" that in her 60 plus years, she has not accomplished on her own. *See* 18 U.S.C. § 3553(a)(2)(D). Moreover, as suggested above, the Court still finds that a 63-month sentence in Oishi's case is necessary to reflect the nature and circumstances of her offense and to avoid unwarranted sentence disparities. *See* 18 U.S.C. § 3553(a)(1), (6).

In sum, whether considered separately or in conjunction with the COVID-19 pandemic, her medical conditions, and changes to sentencing law, the Court finds that the sentencing factors weigh against granting Oishi the relief she seeks.

---

[11] The Court notes that, despite being housed in a minimum-security facility, Oishi has had a few infractions while incarcerated. Dkt. No. 584-9 at 2 (BOP records showing that Oishi has been cited for being in an unauthorized area and failing to follow safety regulations).

## CONCLUSION

For the reasons set forth herein, Oishi has failed to present extraordinary and compelling reasons warranting a sentence reduction. Accordingly, her motion seeking such reduction, Dkt. No. 584, is DENIED.

IT IS SO ORDERED.

DATED: July 30, 2021 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge