IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DORE OISHI,<br><br>　　　　Defendant. | Case No. 17-cr-00555-DKW-8<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

　　Defendant Oishi, now 68-years-old and proceeding *pro se*, asks the Court to grant her immediate release to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. No. 609. Having served approximately 35 months of her 63-month sentence for methamphetamine distribution, Oishi is currently scheduled for release to home confinement under the "Elderly Offender Home Detention Program" on March 14, 2023, about six months from now. Dkt. No. 614 at 3. According to Oishi's declaration, her medical records, the Warden at the prison where she resides, *and the Government, which does not oppose Oishi's motion*, Oishi is unable to obtain adequate care in prison because of cognitive decline stemming from the February 2021 removal of a non-cancerous brain tumor. As discussed below, her unique circumstances are extraordinary and compelling and warrant this Court's approval of her motion for compassionate release.

## **LEGAL STANDARD**

Pursuant to § 3582(c)(1), a district court may modify a final sentence if: (1) the incarcerated person exhausted her administrative remedies before appealing to the court; (2) the incarcerated person establishes that "extraordinary and compelling reasons" warrant the modification; and (3) the modification comports with the relevant sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).

As relevant to the second factor, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform [the C]ourt's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The application notes of § 1B1.13 describe examples of extraordinary and compelling reasons justifying relief, including:

**(A)   Medical Condition of the Defendant.—**

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,
        (II)   suffering from a serious functional or cognitive impairment, or

> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.**—The Defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment; whichever is less.
>
> **(C) Family Circumstances.**—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.
>
> **(D) Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

§ 1B1.13, cmt. n. 1.

As relevant to the third factor, the § 3553(a) sentencing factors include:

"(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . medical care . . . in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing

range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . that . . . are in effect on the date the defendant is sentenced; . . . [and] (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

See 18 U.S.C. § 3553(a) (formatting altered).

## RELEVANT BACKGROUND

On July 10, 2018, Oishi pled guilty to methamphetamine distribution-related offenses. Dkt. No. 224. On August 6, 2019, the Court sentenced Oishi to 63 months' imprisonment to be followed by 5 years of supervised release. Dkt. No. 347. Mittimus was stayed until September 17, 2019, at which time Oishi self-surrendered. *Id.* Oishi is currently scheduled for release to home confinement under the Elderly Offender Home Detention Program on March 14, 2023, with that term of confinement to end, and her term of supervised release to begin, on December 17, 2024. Dkt. No. 614 at 6.[1]

On April 20, 2020, Oishi filed a motion for compassionate release, citing COVID-19 and various health issues. Dkt. No. 466. That motion was denied on May 26, 2020 for failure to exhaust administrative remedies with the Bureau of Prisons. Dkt. No. 474.

---

[1] Under this program, offenders over the age of 60 may be released to home confinement to serve the final one-third of their sentence, after serving the first two-thirds in prison. *See* Dkt. No. 614 at 3 n.2.

On July 1, 2021, Oishi filed a second motion for compassionate release, citing deteriorating health conditions to include cognitive decline associated with the removal of a non-cancerous brain tumor in February 2021.  Dkt. No. 584.[2] This Court denied that motion on July 30, 2021 because Oishi had received timely and quality medical care and had not established she was incapable of functioning in prison.  *See* Dkt. No. 594 at 6–8.  At that time, Oishi was "expected to make a full or close-to-full recovery from her . . . brain surgery"; was "neurologically intact" and "functioning independently" after the surgery; was "able to ambulate, tolerate a regular diet, and perform regular activities of daily living"; presented no "focal deficits" and was scheduled for "daily PT and OT to regain overall [activities of daily living] independence"; and was scheduled to receive adequate follow-up care from Stanford Medicine.  *Id.* at 6 (citations omitted).

On August 15, 2022, Oishi filed the instant third motion for compassionate release, citing further cognitive decline and an inability to provide self-care stemming from the same brain tumor referenced as part of her second motion.  Dkt. Nos. 609–10, 613.  Oishi claims that she suffers increasing symptoms caused by portions of the tumor that were not fully removed in surgery and are still "attached to [her] brain."  Dkt. No. 609 at 2.  More specifically, she asserts:

---

[2]Oishi also cited COVID-19 and podiatric issues.  Dkt. No. 584.

> Since the operation I have gotten progressively worse as I am forgetting where my room is and wander into other people's cells; can't remember names including my cell mate; unable to shower on my own; need [help] taking off and putting on my clothes; need help getting my food and drink; need help feeding myself; my mind w[a]nders and I get frustrated with myself; need to be told and need help taking my medications; I fall down throughout the day . . . . I am suffering from depression and fe[e]l sad that I can no longer care for myself.

*Id.* She claims she has "no teeth, [and uses] a walker." Dkt. No. 613 at 1.[3] Attached to Oishi's motion are statements from three fellow prisoners that Oishi often appears confused, struggles to care for herself, falls down, and requires daily assistance from her peers. Dkt. No. 609-3. Finally, Oishi's motion requests a hearing before this Court in order to demonstrate "how much [she] ha[s] deteriorated since [her] operation." Dkt. No. 609 at 2.

On August 31, 2022, the Government filed a response of *no opposition* to Oishi's motion because "by all available accounts, [Oishi]'s ability to provide self-care at FDC Honolulu[, her current institution,] is severely diminished as a result of cognitive issues that endure more than 18 months after her brain surgery." Dkt.

---

[3]Oishi further asserts that on August 10, 2022, her physician, Dr. Kwon, refused to order a follow-up MRI in order to assess the "remaining tumor in [her] brain" because "BOP cannot help [her]" and her "case is done." Dkt. No. 610. She claims Dr. Kwon told her she "need[s] to go home" and continue her treatment "outside." *Id.* However, this is contradicted by evidence that, on August 3, 2022, Dr. Kwon did order the MRI (targeted for August 29, 2022) with a subsequent neurological follow-up consult. Dkt. No. 614-3.

No. 614 at 9, 12.[4]  In positioning itself thus, the Government credited evidence showing that the BOP is not equipped to care for Oishi's specific medical needs. Oishi's August 23, 2022 inmate profile states that Oishi needs "unstable, complex chronic care."  *Id.*  Oishi's prior BOP physician, Dr. David Duncan, opined that Oishi could not and would not be able to function in a prison environment.  *Id.* at 9 n.9; Dkt. No. 584-7.[5]  Indeed, FDC Honolulu has concluded that Oishi requires a higher "Care Level" than it can provide and has therefore initiated a transfer to a mainland facility with the requisite "Care Level," acknowledging, however, that the transfer process may take several months to complete.  *Id.* at 4, 11–12.

The Government also credited the fact that the FDC Honolulu Warden has concluded that an extraordinary and compelling reason warrants Oishi's release. *Id.* at 4, 12–13.  After consulting with Oishi's physician and other FDC Honolulu personnel and inmates familiar with Oishi's day-to-day behavior and activities, the Warden found that Oishi cannot perform the activities of daily life and requires regular assistance from other inmates in order to function.  *Id.*  Accordingly, the

---

[4] The Government concedes that Oishi has exhausted her administrative remedies.  Dkt. No. 614 at 12.
[5] While Oishi's *current* physician believes Oishi may be able to perform the activities of daily life in prison, even he acknowledges that that is only realistic with the help of a companion unavailable in Oishi's present location.  Dkt. No. 614 at 6, 9 n.9.

Warden asked senior BOP personnel to authorize Oishi's release, a request that might be rejected and will, even if approved, likely take several months.

Finally, the Government found it noteworthy that the BOP has already failed to provide Oishi with essential medical care related to her brain surgery. At the time of the Court's July 2021 denial of compassionate release, Oishi was scheduled to receive an MRI in December 2021, along with a follow-up appointment with a neurosurgeon to assess the stability or impact of tumor remnants. Dkt. No. 614 at 8 n.8. Sometime thereafter, Oishi was transferred from FDC Dublin to FDC Honolulu, and, due to logistical failures as a result of the transfer, Oishi never received her MRI or follow-up appointment. *Id.* Not until August 3, 2022 did Oishi's physician at FDC Honolulu order a new MRI, targeted for August 29, 2022, with the subsequent neurological follow-up consult scheduled for September 16, 2022. *Id.*

Considering these circumstances in the aggregate, the Government concluded that Oishi's presence at a facility that, "by its own admission, is not equipped to care for her" constitutes an extraordinary and compelling reason justifying release. *Id.* at 13. The Government also concluded that release comports with the § 3553 sentencing factors, explaining:

> Given the changed circumstances over the last year, including delayed medical care, cognitive decline, and imminent release date to home

8

> detention, the United States does not object to the proposition that compassionate release would comport with the § 3553(a) factors in this case. Modifying the defendant's conditions of supervised release to require a substantial period of home detention, as proposed, would also help mitigate against concerns that the defendant is receiving an unjust windfall or may return to criminal activity.

*Id.* at 13–14.

## DISCUSSION

### I. Oishi has established that extraordinary and compelling reasons justify her release to home confinement.

The Court agrees with Oishi and the Government that extraordinary and compelling circumstances justify Oishi's release. First, BOP has already failed in providing necessary medical care. Due to Oishi's transfer between prisons, she was unable to receive a December 2021 MRI in order to assess the success of her February 2021 brain surgery. That MRI and neurological follow-up appointment still have not taken place; they are currently scheduled for September 2022, nine months after they were initially scheduled, *fifteen* months after they were initially ordered, and nineteen months after surgery. Second, and perhaps relatedly, it is clear that Oishi is unable to perform day-to-day functions in prison, at least without a companion—something FDC Honolulu admits it cannot provide. *See* Dkt. No. 614 at 13 (pointing out that the treatment delays may have "prevented [Oishi] from identifying and pursuing treatments that might [have] ameliorate[d] her cognitive

decline"). Finally, the Warden at FDC Honolulu believes Oishi should be released to home confinement because the facility he manages is not equipped to provide the minimum level of care Oishi needs.

In short, 68-year-old Oishi suffers from a "deteriorating" and/or "serious . . . medical condition," and/or "serious functional or cognitive impairment," that "substantially diminishes [her ability] to provide self-care within the environment of a correctional facility." *See* § 1B1.13, cmt. n. 1 (persuasive guideline). Although other possible alternatives to compassionate release are in the works, those may not pan out soon, or even before Oishi's scheduled release to home detention in March 2023. Moreover, the extraordinary circumstances here justify *immediate* relief—relief that is within the Court's discretion to provide.

**II.     Release comports with the Section 3553(a) sentencing factors.**

Much of the Court's analysis of the sentencing factors remains unchanged since July 2021, and that analysis still applies here. *See* Dkt. No. 594 at 11–14. One circumstance, however, has materially changed. As the Court noted in its July 2021 order, Oishi suffers from a medical condition not known to the Court at sentencing—the discovery and surgical removal of a brain tumor. While then, it seemed Oishi was likely to recover from her brain surgery such that she could function independently while incarcerated, the evidence available today suggests

otherwise. A term of home confinement will better facilitate the provision of "needed . . . medical care . . . in the most effective manner." *See* 18 U.S.C. § 3553(a)(2)(D). Moreover, as the Government notes, Oishi's medical decline moves the needle with regard to the need "to protect the public from future crimes of the defendant." *See id.* § 3553(a)(2)(C); Dkt. No. 614 at 14 ("The consequences of cognitive decline on recidivism risks are hard to predict, although an inability to function independently tends to suggest the defendant is unlikely to resume active criminal conduct, such as distributing methamphetamine.").

Additionally, although Oishi's criminal and substance abuse history, nature and severity of the offense, and aggravating and mitigating circumstances all remain largely unchanged, Oishi has served an additional thirteen months of her 63-month sentence (now up to approximately 55%), has had no additional disciplinary issues beyond those previously identified in July 2021, and is now only six months away from release to home detention. On balance, under the specific circumstances presented here, the sentencing factors do not weigh against Oishi's release.

## **CONCLUSION**

For the reasons described herein, Oishi's motion for compassionate release to home confinement is GRANTED. *See* Dkt. No. 609. Effective immediately,

Oishi shall serve her remaining term of imprisonment in home confinement until December 17, 2024, at which time her term of supervised release shall commence. The specific parameters of Oishi's term of home confinement shall be determined by the U.S. Probation Department with any necessary court approval.

IT IS SO ORDERED.

Dated: September 9, 2022 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge